CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
FEB 21 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

MICHAEL COLLIER,

*Plaintiff,*

v.

SCHOOL BOARD OF THE CITY OF CHARLOTTESVILLE,

and

RONALD HUTCHINSON,

*Defendants.*

CIVIL ACTION No. 3:04CV00038

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

This matter is before the Court on Defendants' motion for summary judgment. For the reasons stated below, Defendants' motion will be granted in an order to follow.

## I. BACKGROUND

Plaintiff Michael Collier brought this action against Defendants the School Board of the City of Charlottesville ("School Board") and former Superintendent of Charlottesville City Schools ("Superintendent") Ronald Hutchinson, alleging that he was not reappointed to a maintenance position he had held for over 20 years because he sought an accommodation for his knee condition. Plaintiff claims that Defendants violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§12112(a), 12203(a).[1]

---

[1] Plaintiff's other substantive and procedural due process and Virginia Worker's Compensation Act claims were dismissed in a December 16, 2004 Order of this Court.

1

Defendant Ronald Hutchinson was Superintendent from August 2002 through his retirement in June 2004. (D. Mot. S.J., Hutch. Aff. ¶1, Exh. 1). Plaintiff was at all relevant times a Classified employee of the School Board who performed maintenance and related activities in Charlottesville schools.² (*Id.*, Hutch. Aff. ¶2; Compl. ¶6). Classified employees are employed on a non-contract basis, and their employment is subject to an annual letter of appointment. (*Id.*, Exhs. 2, 4).

The School Board has delegated to the Superintendent the duty of deciding whether to reappoint its more than 275 Classified employees upon expiration of their existing appointments. (*Id.*, Hutch. Aff. ¶¶4, 7). In making his decision not to re-appoint Plaintiff in any capacity for the 2003-2004 school year, Hutchinson reviewed Collier's personnel file and relied on the recommendation of Lance Stewart, the City's Facilities Maintenance Manager. (*Id.*, Hutch. Aff. ¶¶9-10, Exhs. 5-6). In a letter dated March 11, 2003, Stewart explained his recommendation that Plaintiff not be re-appointed:

> Mr. Collier has been reprimanded in writing on several occasions in recent years, for complaints including misuse of funds and equipment, loitering, failure to perform directed tasks, and poor performance of assigned tasks. He has been reassigned to new managers and responsibilities on two occasions, hoping to find a right fit. His immediate supervisor since August of 2002, Mr. John Divers, reports that his attitude and performance have shown no improvement, and have in fact degenerated in recent months.

(*Id.*, Exh. 5). The written letters of reprimand alluded to by Mr. Stewart include a letter dated August 15, 2002, signed by Stewart's predecessor as Facilities Maintenance Manager, Thomas Meek, and a letter dated January 13, 2003, signed by John Divers, a Classified employee who is

---

² Under an agreement between the School Board and the City of Charlottesville ("City"), the City actually maintains the schools and supervises the School Board's Classified employees. (D. Mot. S.J., Hutch. Aff. ¶2).

2

Coordinator of School Maintenance and was Plaintiff's immediate supervisor. (D. Reply, ¶¶2-3, Exhs. 8-9).

The August 15, 2002 letter purports to clarify the reasons for Plaintiff's reassignment from HVAC maintenance to general maintenance earlier that month. The letter cites a record of problems with Plaintiff's job performance, including (1) a December 7, 2001 letter advising Plaintiff of deficient work habits, such as "loitering . . ., abrasive, boisterous language, not responding to mobile phone calls or calls to your pager, not completing assigned work and leaving work early"; (2) the discovery while Plaintiff was on annual and medical leave in June–July 2002 by other maintenance personnel assigned to take over his workload that kitchen equipment he had supposedly serviced was in disrepair, and that he made faulty installations of cold solder joints, causing premature equipment failure and higher overall maintenance costs; and (3) Plaintiff's failure to complete an assigned task and failure to cooperate with other employees and contractors in sharing use of limited computing resources upon his return from leave on August 5, 2002. (D. Reply, Exh. 8). Meek advised that during his 30-month tenure, Plaintiff had:

> proven to me and your immediate supervisor your inability to work with any degree of independence or responsible [sic] assignments. Your actions have consistently demonstrated an arrogance and lack of courtesy toward School staff, teachers and administrators. You have persistently failed to complete assigned work. You have abused privileges including the right to make mission critical purchase [sic] on behalf of the City of Charlottesville and the use of your assigned mobile phone, equipment and City vehicle.

(*Id.*). In light of these deficiencies, Meek concluded: "Considering the issues, my preferred recommendation to School Administration is your immediate termination; however, you are being reassigned to building maintenance in an effort to preserve your employment . . . . If you

3

are unable or unwilling to perform at an acceptable level of competency at your building maintenance tasks, a recommendation for termination will be issued." (*Id.*).

The subject heading of Divers' January 13, 2003 letter was "Leaving Job Sites" and detailed five occasions when Plaintiff was seen away from his assigned job site at times unrelated to his lunch period. (*Id.*, Exh. 9). It warned, "if you are seen away from your assigned job site I will be force to take disciplinary action that could result in your termination." (*Id.*). Plaintiff responded with a letter dated January 20, 2003, explaining to Divers that while he was aware that break times were scheduled between 10:00 a.m. to 10:15 a.m., 12:00 p.m. to 12:30 p.m., and 2:00 p.m. to 2:15, workers tend to stray from breaking at these precise times given the impracticality of stopping while in the middle of a task. (P. Resp., Exh. 1). He also gave innocent explanations for the alleged unexcused absences, stating that one of the times, he was using lunch time to do rehabilitative exercise on his knee, and that some of the other times, he was fulfilling verbal work order requests. *Id.* It is unclear whether this letter of explanation was ever reviewed by Hutchinson or placed in Plaintiff's personnel file.

Both the August 15, 2002 and January 13, 2003 letters were placed in Plaintiff's personnel file. (*Id.,* Hutch Supp. Affid. ¶¶2-3). Stewart's recommendation and the material in the personnel file sealed Hutchinson's decision not to reappoint Plaintiff:

> Based on Lance Stewart's recommendation and my review of Michael Collier's performance file concerning job performance, which was consistent with the recommendation from Lance Stewart and the comments therein attributed to John Divers, I alone decided not to appoint Michael Collier for the 2003-2004 school year.

(*Id.*, Hutch Supp. Affid. ¶5).

According to Plaintiff, his supervisors first took retaliatory action against him because of

4

his knee condition in August 2002. (P. Resp., Collier Aff. ¶1). Plaintiff had been employed by the School Board in 1980 as a refrigeration technician in the maintenance department, and in 1996, was transferred to the HVAC department and given additional responsibilities. (Compl., ¶¶6-7). On March 27, 2002, he injured his knee at work, and after surgery on that knee on June 25, 2002, did not return to work until July 30, 2002. (*Id.*, ¶8). He returned on "light duty" status, but his condition soon deteriorated to the point where he returned to the hospital in early August to have fluid drained from his knee. (*Id.*, ¶9; P. Resp., Collier Aff. ¶4). After this medical event, Plaintiff was on leave another month, and during this time, the decision was made to transfer him from HVAC back to the maintenance department. (Compl., ¶¶10-11).

Upon his return, his new workload included painting curbs, which exacerbated his knee condition, as did his duties shoveling snow and ice in the winter of 2002-2003. (*Id.*, ¶¶11-12). Plaintiff requested alternate duties such as truck driving that would be easier on his knee, and informed his supervisor, Mr. Divers, sometime between March 4, 2003, and March 12, 2003, that a letter from his treating physician, Dr. Schildwachter, supporting this request would be forthcoming. (Compl., ¶¶13-15; P. Resp., Collier Aff. ¶¶13-16). Plaintiff picked up the letter from Dr. Schildwachter's office on March 12, 2003, and hand-delivered it to Mr. Divers on March 21, 2003.[3] (P. Resp., Collier Aff. ¶¶16-17; D. Reply, Exh. 7).

Sometime soon thereafter, Plaintiff received a letter dated March 21, 2003, from Defendant Hutchinson, informing him that he was not being reappointed. (P. Resp., Collier Aff.

---

[3] The letter was dated March 4, addressed "To Whom it May Concern," and diagnosed Plaintiff with moderate degenerative arthritis of the knee. (D. Mot. S.J., Exh. 7). Dr. Schildwachter also stated that "[a]ctivities such as shoveling snow" cause pain and swelling in Plaintiff's knee and advised, "It would be helpful if he were allowed to change activities when his knee acts up so that he can continue to work with as little discomfort as possible." (*Id.*).

5

¶18; D. Mot. S.J., Exh. 6). Hutchinson avers that he had no knowledge of Plaintiff's request for an accommodation or of Schildwachter's letter prior to making his decision or sending the March 21, 2003 letter. He also notes that the office of Mr. Divers, where Plaintiff hand-delivered Dr. Schildwachter's letter, is located in a different area of the City. (D. Mot. S. J., Hutch Affid. ¶11; D. Reply, Hutch Supp. Affid. ¶5).

## II. STANDARD OF REVIEW

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate only when the Court, viewing the record as a whole and drawing reasonable inferences in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing'. . . an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

## III. DISCUSSION

### (A) Discrimination claim

Although Plaintiff appeared only to allege a retaliatory discharge claim in Count One of the Complaint, the Court liberally construed the Complaint to include a claim of unlawful discrimination under §12112(a) of the ADA. (Dec. 16, 2004 Memo. Opin.).

Whether Plaintiff's discrimination claim is construed as an unlawful termination or failure to accommodate claim, he must show that he is 'disabled' within the meaning of the ADA to prevail. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 (4th Cir. 2001). To qualify as disabled under the ADA, an individual must demonstrate "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(2). The fact that an employer is aware of a physical impairment, without more, is "'insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action.'" *Haulbrook v. Michelin North America*, 252 F.3d 696, 703 (4th Cir. 2001) (citations omitted).

The only "evidence" in the record that Plaintiff qualifies as disabled under the ADA is (1) the allegation contained in his complaint that he has a "qualified disability," and (2) an unauthenticated letter from his treating physician stating that he has "moderate degenerative arthritis of the knee." (Compl. ¶22, Exh. 1). Plaintiff has had ample opportunity during discovery to develop competent evidence, and yet has not identified or provided a summary of the opinion of any treating physician who has found that his knee condition substantially limits a major life activity. (P. Resp.). Plaintiff has also failed to point to any evidence demonstrating

7

that his employer regarded him as having an impairment substantially limiting one of his major life activities. (*Id.*). In fact, his transfer back to the maintenance department in August 2002, after his knee injury and ensuing surgery, undermines any inference that he was so regarded. *See Michelin*, 252 F.3d at 703. Plaintiff's discrimination claim shall be dismissed because he has failed to point to competent evidence creating a material issue of disputed fact.

## (B) Retaliatory Discharge Claim

### *(i) Plaintiff has failed to establish prima facie case*

To prevail on a claim of retaliation, a plaintiff must either offer sufficient direct and indirect evidence of retaliation, or proceed under a burden-shifting method. *Rhoads,* 257 F.3d at 391. Plaintiff has apparently elected to proceed under the burden-shifting method. (P. Resp.).

Under the burden-shifting method, a plaintiff asserting a retaliatory discharge claim must establish three prima facie elements: "(1) that he engaged in protected activity; (2) that his employer took an adverse action against him; and (3) that a causal connection existed between the adverse activity and the protected action." *Haulbrook v. Michelin North America*, 252 F.3d 696, 706 (4th Cir. 2001). A close temporal connection between the protected conduct and the adverse employment action may alone be sufficiently suggestive of retaliatory motive to satisfy the third element of the prima facie test. *See Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989). Once a prima facie case is established, the burden shifts to the employer "to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions." *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997). If the employer proffers such reasons, the burden shifts back to the plaintiff to "demonstrate that the proffered reason is a pre-text for forbidden retaliation."

8

*Michelin*, 252 F.3d at 706.

In support of his prima facie case, Plaintiff avers that (1) he engaged in protected activity by requesting an accommodation from his immediate supervisor, John Divers, who he soon thereafter informed in early March 2003 that a doctor's letter would be forthcoming recommending that he be given alternative duties to reduce the stress on his knee, and that he in fact hand-delivered to Divers a letter to this effect on March 21, 2003; (2) he subsequently received a letter from Superintendent Hutchinson dated March 21, 2003, informing him that he would not be reappointed; and (3) the close temporal proximity between his request for accommodation and Hutchinson's adverse employment decision raises a sufficient inference of retaliatory intent to establish causation.

Defendants argue that Plaintiff has failed to establish the third element, causation, because even if Divers knew of Plaintiff's accommodation request, Plaintiff has offered no evidence that either Superintendent Hutchinson, the official decisionmaker, or Lance Stewart, the Facilities Maintenance Manager upon whose recommendation Hutchinson relied, were aware of Plaintiff's request. Defendants also contend that even assuming Plaintiff has made a *prima facie* case, he has not met his burden of producing sufficient evidence showing that the nonretaliatory reasons they proffered to explain Hutchinson's decision are pretextual.

Defendants misstate current law in stating that for Plaintiff's *prima facie* case to survive summary judgment, he must show "the person who engaged in the adverse action was aware of [Plaintiff's] protected activities before taking adverse action." (Def. Reply, p.2). Instead, the Fourth Circuit has recognized that the purpose of anti-discrimination laws would be thwarted by limiting the discrimination inquiry to the actions or statements of a formal decisionmaker who

9

does not himself possess an improper motive—but who nonetheless rubber-stamps a decision, report, or recommendation made by a subordinate who does. *See Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 290 (4th Cir. 2004). Thus, an employer may be liable for an adverse employment action even if the "formal decisionmaker" lacks any retaliatory animus, so long as the plaintiff presents sufficient evidence to establish that a subordinate with such animus "was the one 'principally responsible' for, or the 'actual decisionmaker' behind, the action."[4] *Id.* at 288-89. A plaintiff will have failed to make this showing, however, if there is evidence that the formal decisionmaker conducted an independent investigation into the circumstances surrounding the employee's termination—and did not just blindly adopt the subordinate's recommendation. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998).

In *Hill*, a mixed motive Title VII case, the Fourth Circuit held that a safety inspector, Fultz, who allegedly harbored discriminatory animus towards women and older workers, and who reported to plaintiff's supervisor that she had violated company policy—thus causing her supervisor to investigate the violation—was not the "actual decisionmaker" or person "principally responsible" for the ensuing reprimand that led to her dismissal.[5] *Hill*, 354 F.3d at 297. In support of this finding, the Court noted that (1) plaintiff's second and third reprimands,

---

[4] After examining the relevant agency principles in discrimination cases, the *Hill* majority added an important caveat to this rule: an employer may only be held responsible for the unlawful motive of subordinate individuals who act in a supervisory, disciplinary, or managerial capacity. *Id.* at 289, 291.

[5] Plaintiff worked as an aircraft sheet metal mechanic. *Id.* at 282. Fultz was not authorized to reprimand or discipline Plaintiff, but was charged with checking her work to verify that it complied with contract specifications. *Id.* at 295.

10

which were allegedly influenced by Fultz, followed a first reprimand the validity of which she did not dispute, as well as other informal reprimands; (2) plaintiff's supervisor independently investigated the violations Fultz reported; (3) plaintiff had an opportunity to explain and refute the violations before the reprimands leading to her dismissal were issued; (4) neither the supervisor or the other superiors involved in the final termination decision were alleged to be motivated in any way by age or sex discrimination. *Id.* at 291-296. In short, the Court found that even if plaintiff's alleged work infractions would not have been brought to light in the absence of Fultz's discriminatory animus, setting off the chain of events that led to her termination, an employer should not be held liable in the absence of such animus on the part of the actual, principal decisionmakers. *Id.* at 196.

Although this case is distinguishable in some respects from *Hill*, the Court finds numerous key similarities that compel the same conclusion reached in that case: Divers, a subordinate of Stewart and Hutchinson, may have had some influence on the adverse employment decision, but he was neither the "actual decisionmaker" nor the person "principally responsible" for it.

First, Plaintiff has not alleged that upper-level decisionmakers harbored a retaliatory motive; he has properly alleged only that Divers—and not Stewart or Hutchinson—was aware of his request for an accommodation and received Dr. Schildwachter's letter prior to Hutchinson's adverse decision.[6]

---

[6] Only in the body of his response brief does Plaintiff for the first time assert that Lance Stewart knew of his request for an accommodation: "It was the actions of his immediate supervisors, John Divers and Lance Stewart that really were in question. They knew of the request for accommodations and it was there [sic] recommendations that set in motion the non-renewal." (P. Resp., p.4). Plaintiff provides no support for this assertion.

11

Next, the adverse action followed on the heels of reprimands Plaintiff does not dispute or which could not have been influenced by Divers' alleged retaliatory motive. In deciding not to reappoint Plaintiff, Hutchinson did rely on the March 11, 2003 recommendation letter of Stewart, who in turn relied in part on Divers' statement that Plaintiff's performance and attitude had deteriorated.[7] However, Stewart's letter mentions Divers' evaluation as only one among a litany of performance problems,[8] and nothing in it shows that Divers influenced Stewart's view or awareness of these other problems. Instead, the reasons cited in Stewart's letter are well supported by the contents of Plaintiff's personnel file, much of which was not even arguably influenced by Divers (given that he did not supervise Plaintiff until August 2002) or, more to the point, by Plaintiff's request for accommodation (which was not made until early March 2003).

Finally, the evidence that Hutchinson independently reviewed Plaintiff's personnel file undermines any inference that Divers was the "actual" or "principal" decisionmaker. The most potent catalogue of Plaintiff's poor work history is found in Meek's August 15, 2002 letter, in which many past and very recent performance issues were detailed, and in which Meek concluded that his own preference would be Plaintiff's immediate termination. Hutchinson

---

Fed. R. Civ. P. 56(c) specifies that a court may consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . ." in deciding a motion for summary judgment. Pleadings do not include a response to a summary judgment motion, Fed. R. Civ. P. 7(a), and, thus, the Court may not consider the allegation that Stewart knew of Plaintiff's protected activity in ruling on Defendants' motion.

[7] The record is not clear as to whether Divers offered Stewart this negative view of Plaintiff's performance before or after Plaintiff made his oral request for an accommodation. Drawing all reasonable inferences in Plaintiff's favor, the Court will assume Divers had heard Plaintiff's request before informing Stewart of his views.

[8] Plaintiff admits to "some history of problems in his employment." (P. Resp., p. 4).

12

reviewed this letter.

Although Meek's letter shows that Plaintiff was given a last chance to improve, and that Divers was thereafter primarily responsible for evaluating Plaintiff's improvement or lack thereof, this fact does not itself create a material issue as to the causation element—just as Fultz's role as the "but for" cause of the two final reprimands leading to termination in *Hill* did not create a material issue in that case. This conclusion is justified because (1) Divers gave Plaintiff poor appraisals long before Plaintiff engaged in any "protected activity"; (2) Stewart, who took over Meek's position and upon whose recommendation Hutchinson principally relied, based his recommendation only in part on Divers' evaluation; and (3) Hutchinson did not merely rubber-stamp Stewart's recommendation, but carried out an independent review of the personnel file, which contained an abundance of supporting evidence not possibly influenced by Divers or, for that matter, by anyone's knowledge of Plaintiff's March 2003 request for an accommodation.[9]

---

[9] The two factors distinguishing this case from *Hill* are (1) the lack of evidence that Plaintiff had an opportunity to explain or refute the poor appraisals contained in his personnel file; and (2) the ambiguous evidence as to whether Divers is a "subordinate individual[] who act[ed] in a supervisory, disciplinary, or managerial capacity" for the purposes of *Hill*.

With respect to the second factor, only subordinates who act in one of these capacities can subject an employer to liability under the ADA. *Hill*, 354 F.3d at 289. The extent of Divers' supervisory or disciplinary authority is not clear. In his January 13, 2003 letter to Plaintiff, Divers threatened to take disciplinary action that could "result" in Plaintiff's termination. This language could mean that Divers has no more authority than Fultz did in *Hill*—reviewing Plaintiff's work and reporting deficiencies to superiors who are charged with investigating and making the ultimate employment decision—or that Divers himself can more directly cause Plaintiff's termination. Undermining the latter interpretation, however, Hutchinson has averred that Divers is himself a noncontract, Classified employee who is also subject to periodic re-appointment, and that Divers has no authority to decide whether to reappoint other Classified employees. (D. Mot. S.J., Hutch Affid. ¶11).

In any event, the Court does not find the two factors cited above justify a different conclusion from that reached in *Hill*. Had Hutchinson given Plaintiff an opportunity to explain himself, this may have bolstered the conclusion that Hutchinson independently appraised Stewart's recommendation. However, the lack of evidence that Hutchinson did so does not

13

In short, no material issue of disputed fact exists as to who was the actual decision-maker or person principally responsible for the decision not to reappoint Plaintiff: the only plausible candidates are Hutchinson and Stewart. As Plaintiff has failed to properly allege that either knew about his accommodation request, he has not raised sufficient evidence to establish the causation element of his *prima facie* case and to defeat summary judgment.

### *(ii) Plaintiff has failed to point to evidence showing that the reasons proffered for Hutchinson's adverse employment decision are pretextual*

Even if Plaintiff was found to have established a *prima facie* case of discrimination, summary judgment would still be appropriate given his failure to effectively rebut the reasons Defendants have proffered for Hutchinson's adverse employment decision.

Defendants have offered evidence showing that Superintendent Hutchinson based his decision on the recommendation of Lance Stewart and his personal review of Plaintiff's personnel file. The file confirmed Stewart's assertions that Plaintiff had a long and varied history of employment problems.

Plaintiff claims that the record demonstrates the pretextual nature of the decision because it shows (1) a previous history of retaliatory action taken against Plaintiff because of his injury; (2) obviously pretextual complaints in January 2003; and (3) the lack of pending "job issues" in March 2003. None of Plaintiff's contentions has merit.

Plaintiff asserts that an inference of previous retaliation in the August 2005 decision to transfer him from HVAC to the maintenance department is warranted, thus raising an inference

---

undermine the conclusion that he did far more than merely serve as a conduit for Divers' alleged retaliatory animus. Further, a convincing weight of the evidence demonstrates that Divers' "supervisory" role was relatively limited and that he fed merely fed "disciplinary" information up the chain of command.

14

of a similar retaliatory motive in the March 2003 decision not to reappoint him. Plaintiff tries to support this argument by claiming that the only new development between December 2001, when he admits he was reprimanded, and August 2002, when he was transferred, was his knee injury and ensuing need to take extensive leave and return on light duty status. Because Defendants decided to reappoint him in March 2002 despite the December 2001 incident, it could not plausibly be cited as the cause of the transfer, and, thus, retaliatory motive is the only plausible cause.

The factual premise of Plaintiff's argument—of no new blemishes on his work record—is demonstrably at odds with the evidence. In his August 15, 2002 letter explaining the decision to transfer Plaintiff, Thomas Meek cited numerous unfavorable "developments" between December 2001 and August 2002. These include (i) the discovery while Plaintiff was on leave in June–July 2002 by substitute maintenance personnel that equipment he had been assigned to service was in disrepair and that his faulty maintenance work was causing premature equipment failure and higher costs; (ii) his failure to complete an assigned task upon return from leave; (ii) his failure to cooperate with other employees and contractors in sharing use of limited computing resources. Plaintiff has not even attempted to rebut these assertions; thus, he has failed to raise any inference of a pattern of retaliation creating a material issue as to pretext.

As for Divers' January 13, 2003 letter concerning Plaintiff's absences from work sites, although Plaintiff's January 20, 2003 letter of explanation clearly reveals that he has a different view of the fluidity of work break times than Divers, and that he may have had legitimate work-related explanations for being away from assigned job sites, it does nothing to show that Divers' reprimand was pretextual. Plaintiff has pointed to no evidence that other employees are

15

frequently seen away from their work sites during non-break times without being reprimanded, and that he was thus pretextually singled out for reprimand. *Compare Rhoads*, 257 F.3d at 394. Instead, the undisputed evidence of record shows Divers' reasonable concern that Plaintiff was not once, not twice, but five times within three months seen away without known excuse from the job which he is paid to perform. *Cf. Michelin*, 252 F.3d at 706-707 (finding that employee failed to rebut employer's explanation of its termination decision where evidence showed that employee failed to meet employer's reasonable expectation of cooperation with instructions). Evidence that unexcused absences, and reasonable explanations therefor, can co-exist does not create a material issue as to pretext.

For the same reasons just discussed, Plaintiff's final assertion that there were no pending "job issues" in March 2003 is contradicted by clear evidence of record and unsupported by competent evidence to the contrary. Plaintiff has failed to cite evidence tending to show that Defendants' reasons for declining to reappoint him are pretextual.

## IV. CONCLUSION

Plaintiff has not pointed to any competent evidence that he was disabled or regarded as such under the ADA, and thus his discrimination claim will be dismissed. Plaintiff has also failed to make out a *prima facie* case of retaliatory discharge under the ADA because he has not sufficiently shown that his request for accommodation was causally related to Defendant Hutchinson's adverse employment decision. In the alternative, even assuming Plaintiff made out a *prima facie* case, he has failed to satisfy his burden of citing evidence creating a material issue as to the allegedly pretextual nature of the reasons cited by Defendants for Hutchinson's decision.

16

Thus, Defendants' motion for summary judgment will be granted in an order to follow.

The Clerk of the Court is directed to send certified copies of this Memorandum Opinion to all Counsel of Record.

ENTERED: _____
U.S. District Judge

_February 21, 2006_
Date